IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00056-MR-WCM

| | | |
|---|---|---|
| MCCARTHY IMPROVEMENT COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| BLYTHE DEVELOPMENT CO.; LIBERTY MUTUAL INSURANCE COMPANY | ) ) ) ) | |
| Defendants. | ) ) | |
| WESTERN SURETY COMPANY, | ) ) | |
| Third Party Defendant | ) | |

This matter is before the Court on a Joint Motion for Appointment of Master (the "Motion to Appoint," Doc. 22).

I.     **Background**

On March 14, 2022, McCarthy Improvement Company ("MCI") filed its Complaint against Blythe Development Co. ("Blythe") and Liberty Mutual Insurance Company ("Liberty Mutual"). Doc. 1. MCI alleges that Blythe contracted with the North Carolina Department of Transportation for a road modification and reconstruction project (the "Project") and that Liberty Mutual issued a payment bond to secure the performance of Blythe's payment

1

obligations to its subcontractors on the Project. Subsequently, Blythe entered a subcontract with MCI (the "Subcontract") under which MCI would furnish and install concrete paving for the Project. Doc. 1 at 2.

MCI alleges generally that Blythe subsequently postponed MCI's start date on the Project multiple times, that MCI accrued additional costs due to the delays and MCI's mobilization efforts, that Blythe refused to recognize modifications to the work that Blythe had directed, and that Blythe has refused to recognize MCI's claims for the additional costs. Id. at 2-5.

On May 9, 2022, Liberty Mutual and Blythe answered the Complaint. Doc. 11, 12. Blythe also asserted a counterclaim against MCI and a third-party claim against Western Surety Company ("Western Surety"), which issued a performance bond for MCI. Doc. 12.

On July 14, 2022, Western Surety and MCI filed answers to the third-party claim and counterclaim. Doc. 17, 18.

On August 4, 2022, the parties submitted a Report of Initial Attorneys Conference (the "Report," Doc. 20). In the Report, the parties set out proposed pretrial deadlines but also stated that they jointly sought the appointment of a special master pursuant to Rule 53(a)(1)(A) of the Federal Rules of Civil Procedure. Doc. 20 at 3.

On August 17, 2022, the parties filed the Motion to Appoint, as well as the Affidavit of Jason B. James, the parties' proposed special master. Docs. 22, 23.

A hearing on the Motion to Appoint, as well as an initial pretrial conference, was conducted on August 19, 2022. At the conclusion of the hearing, the undersigned took the Motion to Appoint under advisement. The parties later submitted a supplemental brief supporting the Motion to Appoint, as well as a copy of the Subcontract. Docs. 25, 26.

## II. Discussion

Rule 53(a)(1) provides that "a court may appoint a master only to:"

> (A) perform duties consented to by the parties;
>
> (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:
>
>> (i) some exceptional condition; or
>>
>> (ii) the need to perform an accounting or resolve a difficult computation of damages; or
>
> (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

A decision whether to appoint a special master is within a court's sound discretion. See Advisory Committee Notes, 2003 Amendments ("Subparagraph (a)(1)(A) authorizes appointment of a master with the parties' consent. Party

3

consent does not require that the court make the appointment; the court retains unfettered discretion to refuse appointment").

Here, the parties contend that Mr. James has experience in construction law disputes and that his appointment as a special master would be appropriate because this case is "likely to involve certain issues unique to the construction industry, such as critical path delay analysis, which are likely to be presented through the use of various expert witnesses." Doc. 22 at 2. The parties additionally assert that, although the matter could be referred to arbitration under an arbitration clause that appears in the Subcontract, they "desire to have a Special Master appointed in light of the difficulties with conducting certain discovery of subpoenas for the production of documents and deposition testimony (from both in state and out-of-state witnesses)." Doc. 25 at 2. In short, the parties contend that the appointment of a special master would provide the "best of all worlds" – where a special master with construction dispute expertise and who is also vested with the authority of the Court to enforce subpoenas would preside over an arbitration-like proceeding. Doc. 25 at 6.

The Fourth Circuit has noted that "[p]arties to a private arbitration agreement forego certain procedural rights attendant to formal litigation in return for a more efficient and cost-effective resolution of their disputes." Comsat Corp. v. National Science Foundation, 190 F.3d 269, 276 (4th Cir.

4

1999) (citing Burton v. Bush, 614 F.2d 389, 390–91 (4th Cir.1980) ("When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial")). Accordingly, a "hallmark of arbitration—and a necessary precursor to its efficient operation—is a limited discovery process" and an arbitrator's subpoena power is generally "constrain[ed]." Comsat, 190 F.3d at 276. As noted by one court, discovery in an arbitration proceeding may be compelled "against a non-party under 'unusual circumstances' and only upon 'a showing of special need or hardship.'" Robertson v. T-Mobile US, Inc. No. RDB-19-2567, 2019 WL 5683455, at *2 (D. Md. Nov. 1, 2019) (quoting Comsat, 190 F.3d at 276 and enforcing a subpoena *duces tecum* issued by the arbitrator against a non-party to the arbitration proceeding based on the petitioner's demonstration that the information sought was integral to petitioner's claim and otherwise unavailable).

The undersigned acknowledges the parties' concerns regarding possible problems they may encounter conducting discovery but, respectfully, is not persuaded that the appointment of a special master is necessary here.

As acknowledged by counsel during the August 19 hearing, while this matter may present issues that are unique to the construction industry, the case does not appear to be overly complex.

Further, though the parties note that it is possible they will need to enforce subpoenas to secure the testimony of out-of-state witnesses, it is not clear that any of those witnesses will actually refuse to participate voluntarily in the parties' discovery efforts, should the matter be referred to arbitration. Relatedly, as noted above, in the event a non-party were to object to participating in arbitration, a mechanism exists for compelling the non-party's response, provided a sufficient showing is made.

Finally, the parties have not provided the Court with any specific authorities that have approved of a special master acting in the manner they suggest here.

Consequently, the undersigned concludes that the Motion to Appoint should be denied and a Pretrial Order and Case Management Plan should be entered. The parties may then proceed through litigation in the ordinary course, including engaging in court-enforceable discovery, and on to trial before the District Court. In the alternative, the parties remain free to request that the matter be referred to arbitration, if appropriate.

Accordingly, the Joint Motion for Appointment of Master (Doc. 22) is **DENIED**.

It is so ordered.

Signed: September 16, 2022

*/s/ W. Carleton Metcalf*

W. Carleton Metcalf
United States Magistrate Judge